## Nuetzel v. Travelers Protective Association.

(Decided February 29, 1916.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch No. 2).

1.  Insurance—Application for Insurance—Section 679 Kentucky Statutes.—Section 679 of the Kentucky Statutes does not forbid the right to look to non-filed documents therein mentioned in order to ascertain the thing agreed to be done by one of the parties, when such thing is not shown by the certificate or policy, or any document or writing, or copies thereof, attached to such certificate or policy, and in such cases the non-filed document may be resorted to for the purpose of ascertaining the thing agreed to but not shown by the certificate or policy, or papers attached thereto.

2.  Insurance—Application for Insurance.—The said section of the statute does not prevent the insured from relying upon the Constitution and by-laws of the insurance company or association for the purpose of ascertaining the sum which such company or association agreed to pay upon the event provided against, where such sum is not to be found in the certificate or policy, or from anything attached thereto, as this would not be introducing any new element into the transaction, but only a supplying of an essential element which had been omitted and without such supplying the transaction by which the insurance was attempted to be effected would be an absurdity and a nullity.

3.  Insurance—Application for Insurance.—Where the company or association issued a certificate in consideration of dues paid, to one becoming a member thereof, in which certificate it is recited in substance that the member is entitled to all of the benefits of the association provided for in the constitution and by-laws, without stating anywhere the amount of such benefits, it is competent for the member in a suit on the certificate to show by the constitution and by-laws the amount of the benefits to which he is entitled under them, although no copy of the constitution or by-laws is attached to the certificate.

BENJAMIN F. WASHER for appellant.

WEHLE & WEHLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee (whom we shall hereafter call defendant) is a mutual benefit association, incorporated under the laws of the State of Missouri, and on the 27th day of February, 1902, it issued to the appellant (whom we shall hereafter refer to as plaintiff) a certificate of membership to the association, which by its terms entitled

the plaintiff as such member "to all the benefits accruing from such membership," the certificate being as follows:

"T                               T
P      A              P      A

## THE TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA.

By this certificate of membership, certifies that Frederick O. Nuetzel, of Louisville, Kentucky, is a member of the TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA and is entitled to all the benefits accruing from such membership, *under the provisions of the constitution and by-laws* of this association, subject to the conditions printed on the back hereof, and the application of membership, all of which are made a part of this certificate.

"Benefits in case of death payable to Clara D. Nuetzel, his wife.

"In witness whereof, this association has caused this certificate to be signed by its President and Secretary under the seal of the association, at St. Louis, Mo., this twenty-seventh day of February, A. D. 1902.

"SAM R. JONES,<br>"President."

The rules, or conditions, printed on the back of the certificate, are as follows:

"The member hereby agrees that the following rules shall be observed: That the Travelers Protective Association of America shall not be liable for injuries accrued by a member in occupations more hazardous than specified in his application for membership, or in case of injuries, fatal or otherwise, wantonly or intentionally inflicted upon himself, while sane or insane, or in case of disappearance, or injuries of which there is no visible mark upon the body (the body itself not being deemed such a mark in case of death), or in case of injury, disability or death happening to the member while intoxicated, or in consequence of his having been under the influence of any narcotic or intoxicant, or death or disability when caused wholly or in part by any bodily or mental infirmity or disease, dueling, fighting, wrestling, war or riot, injury resulting from an altercation or quarrel, unnecessary lifting, voluntary over-exertion (unless

in a humane effort to save human .life), voluntary or unnecessary exposure to danger, or to obvious risk of injury, or by unintentional injuries inflicted on the member by any other person, injury received either while avoiding or resisting arrest, while violating the law or violating the ordinary rules of safety of transportation companies, or riding on a locomotive, or to cases of injury caused by the diseases of epilepsy, paralysis, apoplexy, sunstroke, freezing, orchitis, hernia, lumbago, vertigo or by sleep-walking, voluntary inhalation of any gas or vapor, injury, fatal or otherwise, resulting from any poison, or infection, or from anything accidentally or otherwise taken, administered, absorbed or inhaled, disease, death or disability resulting from surgical treatment (operation made necessary by the particular injury for which claim is made and occurring within three calendar months from the date of accident excepted).

"Any advisory surgeon, physician or other authorized representative of this association shall be allowed to examine the person or body of an injured member as often as may be necessary, in regard to any alleged injury or cause of death, and a refusal to allow such examination shall forfeit any and all claims under this certificate.

"Beneficiaries can be changed only on application to the Secretary at St. Louis.

"Any member meeting with an accident must notify the State Secretary of the division of which he is a member and the National Secretary immediately of said accident, giving full particulars of same and name of attending physician. In case of failure to so notify, except because of unconsciousness or physical inability, the member shall forfeit all rights to insurance benefits."

It will be observed from a reading of the certificate and the printed rules on the back thereof that the defendant, among other things, promised the plaintiff, as the holder of his membership certificate, to pay to him *some* benefits in case he sustained injuries by accident of a certain prescribed nature, and furthermore agreed to pay his beneficiary named in the certificate *some* amount of money upon the death of the plaintiff, the beneficiary named being his wife. There is no fixed amount either in the face of the certificate or the printed rules on the back of it of what the accident benefits should be, nor is there in either the face of the certificate or

the printed rules on the back of it any fixed sum that would be due to his beneficiary in case of his death. These items are to be ascertained exclusively, as stated in the certificate "under the provisions of the constitution and by-laws of this association."

On April 13, 1913, the plaintiff sustained an accident by falling from a ladder by which his left leg and the knee cap thereof, as well as the ligaments surrounding it were seriously injured, resulting in his being confined, as alleged, to an infirmary for a period of twenty weeks, during which time he was totally disabled, and he charged that following the expiration of his total disability, he was partially disabled for an additional period of ten weeks or more. In compliance with the requirements of the association, he made out proof of his accident, together with the resulting injuries and disabilities and claimed that under the constitution and by-laws of the association, a member of the class he was, was entitled to an indemnity of $25.00 per week for the total disability resulting from his accident and to $12.50 per week for the ten weeks' partial disability which he claimed. These items aggregated a total sum of $625.00. The association declining to pay this sum or any part of it, he filed this suit against it in the Jefferson circuit court, Common Pleas Division No. 2, on March 19, 1914, seeking to recover from it the sum of $625.00. The defendant demurred to the petition, which was overruled, and it filed its answer, the first paragraph of which was a general denial of the allegations of the petition, and in the second paragraph it relied upon certain false and fraudulent answers, charged to have been made by the plaintiff in answer to certain material questions propounded to him in the written application which he made when he obtained his certificate of membership. The plaintiff filed a demurrer to the second paragraph of the answer upon the ground that neither the application nor a copy thereof was attached to the certificate, as is required by section 679 of the Kentucky Statutes. The court sustained this demurrer, whereupon the defendant filed an amended or supplemental answer, in which it was, in substance, stated that there was nothing in the face of the certificate, nor in any of the conditions printed on the back of it, to show that the defendant agreed to pay any fixed sum as indemnity for accidental injuries and that such sum could only be ascertained by referring to

the constitution and by-laws of the defendant, neither of which was attached to the certificate, nor was there a copy of either attached to it, and section 679 was invoked and relied upon by it to defeat a recovery. A demurrer was filed by the plaintiff to this pleading and the court carried the demurrer back to the petition and sustained it, and the plaintiff declining to plead further, his petition was dismissed and from this judgment he prosecutes this appeal.

Section 679 of the Kentucky Statutes, as it existed in 1902, at the date of the issuing of the certificate sued on, is as follows:

"679. Application or Charter Referred to in Policy Must Be Attached to It—Fraternal Organizations Excepted.—All policies or certificates hereafter issued to persons within the Commonwealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the constitution, by-laws or other rules of the corporations, either as forming part of the policy or contract between the parties thereto or having any bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, and the portion of the constitution, by-laws or other rules referred to; and unless so attached and accompanying the policy, no such application, constitution, by-laws or other rules shall be received as evidence in any controversy between the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties. The said policy or certificate, application, constitution, by-laws or other rules shall be plainly printed, and no portion thereof shall be in type smaller than brevier; provided, however, that nothing in this section shall be construed as applying to health certificates or constitutional receipts, or other evidences used in reinstatement of a policy or certificate."

It is admitted in the supplemental, or amended answer, and indeed shown by a copy of the constitution and by-laws filed therewith, that in them provision is made by which some sums of money are to be paid to the member upon the happening of the contingencies provided against, including the one involved in this case, and, as we understand the record, the sum sought to

be recovered is the correct one provided for, conceding the facts to be as alleged by the plaintiff in his petition.

It will be seen, therefore, that the question for determination is whether under the facts disclosed by the record the defendant may invoke the aid of the section of the statute, *supra,* which is conceded to be applicable to such insurance at the time of the issuing of this certificate, to defeat a recovery.

The section of the statute in question assumes that the negotiations of the parties, culminating in the issuing of the certificate or policy, constitute, as shown therein, an enforceable contract by each one against the other, although it may be contemplated by the parties that such contract may be enlarged, modified or qualified by other documents referred to in the policy or certificate but not attached thereto when they were issued and delivered. It was to prevent such non-attached but referred to papers from being used for the contemplated purpose that the legislature had in mind in enacting the law. It was its purpose that the insured should have at hand all parts of the contract that might be expected to enter into the measure of the company's liability to him or his obligation to it. It was not the intention to, nor does the statute forbid the consulting of such referred to but non-attached papers in order to discover the residue of an unfinished contract, so as to render the negotiations between the parties enforceable, and not nugatory and meaningless. In other words, the statute forbids the alteration in any way of the finished contract as found within the lids of the certificate or policy when delivered, by looking to the forbidden extraneous papers, but it does not prevent such extraneous papers from furnishing the residue of an unfinished contract as shown by the certificate or policy.

Unless the constitution and by-laws of the defendant in the instant case may be looked to in order to ascertain the only promise or agreement, and in fact all of the promises and agreements of the defendant, the certificates sued on standing alone forming the only contract between plaintiff and defendant would be entirely unilateral and of no value whatever to plaintiff, there being no promises or agreements found in the certificate or the rules printed on the back thereof made by the association defendant. This would reduce the transaction of 1902, resulting in the issuing of the certificate, into

an absurdity. Without a reference to the constitution and by-laws, the transaction shown in the certificate would be that the plaintiff as a member of the defendant association should continue to pay to it the assessed dues in consideration of no promises or agreements on behalf of it.

The intention of the parties herein whereby the certificate was issued by the defendant and delivered to and accepted by the plaintiff, was crtainly intended to accomplish something. It is the rule of law that all writings, whether they be contracts or statutes, shall not be presumed to have been entered into or enacted in vain, and no statute will be construed or applied so as to result in an absurdity. (Sutherland on Statutory Construction, section 479; 36 Cyc., pages 1106, 1107 and 1108. See also Bailey v. Comm., 11 Bush, 688; Comm. v. Ledman, 127 Ky., 603.)

Following these views, we hold that the provisions of section 679 do not apply in cases where it is necessary to resort to the non-attached but referred to documents mentioned therein in order to ascertain the promises of one of the parties, or an essential element of the contract supposed to be contained in the certificate or policy, for without such interpretation of the section, the transaction between the parties as manifested by the certificate or policy, standing alone, would be a vain, empty and absurd performance.

This does no violence to the section of the statute under consideration, nor to the purpose for which it was enacted, and at the same time prevents the company from escaping liability through a resort to the provisions of the statute. We are fortified in these views by the opinion in the case of Norristown Title Co. v. Hancock Insurance Co., 132 Penn. St. Rep., 385. In that case the policy was issued to the insured and in the face thereof it agreed to pay upon his death the amount of the insurance "to the beneficiary named in the application for this policy." There was no beneficiary named in the policy, nor was the application, or any copy of it, attached to the policy. After the death of the insured, the beneficiary named in the application, William Legg, sued the company to recover the insurance. There existed a statute in the State of Pennsylvania almost, if not identical with our statute, as contained in this section, *supra*. The plaintiff offered

to prove by oral testimony that he was the intended and actual beneficiary in the policy. This was objected to, and he then offered to show by the non-filed application that he was such beneficiary, which was also objected to, which objection was upon the ground that the application being non-attached to the policy could not be introduced as evidence for any purpose. The objection was overruled and the application was admitted for the purpose for which it was offered, to which the company excepted. The trial resulted in a judgment against it and the ruling of the court in admitting the application was affirmed on appeal by the Supreme Court of the State of Pennsylvania, and in doing so it used this language:

"The defendant company continued to receive the premiums from Mrs. Cruikshank, and if the objection now interposed is sustained, the result is a hardship little short of fraud, for the company received her money knowing all the while that it would make no return therefor. The company failed to comply with the requirements of the act of 1881, and now sets up its own failure as a defence to the policy.

"Perhaps we are too liberal to the defendant. The plaintiff offered in evidence the application which was produced by the defendant company. It contained the name of William Legg. This offer was made for the purpose of showing the beneficiary named in the application. The parties to the contract referred to this paper to supply an omission; without this supply, the contract was meaningless. If we had sustained this offer we fail to see how the defendant company could have had any just cause of complaint. The act of 1881, which was passed in the interests of the insured, never contemplated that such an improper use would be made of it. The admission of the application for the sole purpose of supplying the name of the beneficiary is demanded, in order that justice may be done to both parties; it does no violence to the purpose of the act of 1881. If the company is to escape liability upon its policies under the present plea here interposed, then the act of assembly becomes a snare to entrap the ignorant and enrich the insurance companies."

To uphold the contention of the defendant here would not only permit it to escape liability, but would also constitute the transaction out of which the certificate

grew into a meaningless performance, and to allow the association to collect through the years that have transpired the dues paid by the plaintiff, when it knew that these collections were being made upon no consideration flowing from it and for which it could not be compelled in law to make any return. We fail to find where the law has yet gotten itself to the point where it is willing to do this.

For a still further reason the contention of the defendant is unsound. It will be noticed that the introduction of the constitution and by-laws, as sought in this case, is not for the purpose of introducing any new element of contract, nor for the purpose of introducing any additional, modifying or qualifying obligation upon either party. It is sought only for the purpose of ascertaining the amount of the benefits which the defendant agreed to pay to the plaintiff upon the contingency set out in his petition, and for this reason it does not violate the provisions of the sections of the statute under consideration.

This phase of the case is fully sustained in the case of Corley v. Travelers Protective Association (being this same defendant), reported in 105 Fed. Rep., page 854. The opinion was rendered by the Federal Circuit Court of Appeals for the Sixth Circuit, including the State of Kentucky, and it dealt with precisely the same character of certificate as the one involved in this case, and the precise question raised herein was determined therein against the present contention of the defendant. The contract there under consideration had been entered into in Kentucky and section 679 of the Statute was invoked by the defendant as here and for the same purpose. The opinion was written by Judge Day, then a Federal Circuit Judge for the Sixth Circuit, but now one of the Judges of the Supreme Court of the United States. Upon the question under consideration, Judge Day in that opinion disposes of it in the following language:

"It is urged that this construction will prevent the plaintiff from recovery under this certificate, as the constitution must be looked to in order to make out a recovery of any amount, and no part of it is printed upon the certificate. But we find that the certificate undertakes that the 'benefits' in case of death shall be payable to the beneficiary. It does not introduce any new

element of contract between the parties to ascertain the amount of this benefit from this constitution. The purpose of this statute is to require the company, in its policy or certificate, to bring all of the provisions of the contract to the attention of the insured, and definitely fix the conditions of the insurance beyond the power of others to change or enlarge the contract after his decease. To escape payment because the certificate did not comply with the statute, by failing to print the provisions fixing the amount to be recovered in case of death, would be permitting the company to avoid the contract by its own wrong in failing to comply with the statute.''

In the instant case, as in the Corley case, the only purpose of resorting to the non-attached constitution and by-laws is to ascertain the amount of the benefits to which the plaintiff is entitled. It is not sought thereby to alter or change any stipulation in the certificate, and to permit such documents to be resorted to will give the contract some meaning and effect and not render it absurd and meaningless, as well as to prevent the perpetration by the defendant of a glaring fraud, if its contentions should be upheld. We therefore conclude that the court erred in sustaining the demurrer to the petition and in refusing to sustain it to the amended or supplemental answer.

It is insisted by the plaintiff that section 679 was enacted for the benefit of the insured and that the duty to attach the papers therein referred to, or copies thereof, devolves upon the company, and that it may not rely upon non-attached papers which it was its duty to have attached. There is much reason for this position and many of the cases which have been before this court wherein the statute was under consideration use expressions very indicative of the correctness of this position, but we deem it unnecessary to pass upon the point herein.

For the reasons indicated, the judgment is reversed, with directions to proceed in accordance with this opinion.